IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK10-40875-TLS |
| | ) | |
| AFY, INC., a/k/a | ) | CH. 7 |
| Ainsworth Feed Yards Company, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| JOSEPH BADAMI, Chapter 7 Trustee, | ) | ADV. NO. A10-04062-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SEARS CATTLE CO., | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROLLING STONE LAND & CATTLE, L.L.C., | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |
| SEARS CATTLE CO., | ) | |
| | ) | |
| Counter-Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOSEPH BADAMI, Chapter 7 Trustee, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| JOSEPH BADAMI, Chapter 7 Trustee, | ) | ADV. NO. A10-04063-TLS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROBERT A. SEARS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |

| | |
|---|---|
| ROLLING STONE LAND & CATTLE, LLC, | ) |
| Intervenor. | ) |
| ROBERT A. SEARS, | ) |
| Counter-Claimant, | ) |
| vs. | ) |
| JOSEPH BADAMI, Chapter 7 Trustee, | ) |
| Counter-Defendant, | ) |
| ROLLING STONE LAND & CATTLE, L.L.C., | ) |
| Cross-Claimant, | ) |
| vs. | ) |
| ROBERT A. SEARS, | ) |
| Cross-Defendant. | ) |

## ORDER

A consolidated trial was held in North Platte, Nebraska, on June 21, 2011, in the adversary proceeding filed by Joseph Badami, trustee, against Sears Cattle Co. (Case No. A10-4062), and the adversary proceeding filed by Joseph Badami, trustee, against Robert A. Sears (Case No. A10-4063). James A. Overcash and Joseph H. Badami appeared for the Chapter 7 trustee, Joseph H. Badami, and Jerrold L. Strasheim appeared for Defendants Sears Cattle Co. ("Sears Cattle") and Robert A. Sears.[1]

---

[1] Rolling Stone Land & Cattle, LLC filed a motion to intervene in both cases on July 9, 2010 (Fil. #3). The motion included a draft answer and cross-claim in each case. An order was entered in A10-4063 granting the motion to intervene (Fil. #9) and the answer and cross-claim were filed (Fil. #10 and 11). However, the cross-claim was later dismissed (Fil. #26 and #27). Rolling Stone's motion was never addressed by this court in A10-4062, and Rolling Stone did not participate in the trial.

*Background*

These adversary proceeding arose out of the Chapter 11 bankruptcy case of AFY, Inc. The background facts are as follows:

1. On March 25, 2010, AFY, Inc. ("AFY") filed its voluntary petition under Chapter 11 of the Bankruptcy Code. Mr. Strasheim was the attorney for the corporation, and Robert A. Sears signed the bankruptcy petition as the corporation's president. Previously, on February 2, 2010, Mr. Strasheim commenced Chapter 11 bankruptcy proceedings on behalf of Robert A. Sears (Case No. BK10-40275) and his son, Korley Sears (Case No. BK10-40277).

2. The bankruptcy schedules for AFY were filed on March 25, 2010, and were executed under penalty of perjury by Robert A. Sears. In Schedule B, a list of "Accounts Receivable" is attached, including a receivable from "Sears Cattle" in the amount of $291,937.00.

3. Prior to its bankruptcy filing, AFY operated a large feed yard and farming operation in Brown County, Nebraska, and owned certain real estate and equipment. Most, if not all, of the real property of AFY, along with some real property of other related persons and entities, was sold at auction on February 7, 2010, at the request of AFY and the other sellers. As a result of the auction, AFY and other sellers entered into pre-petition agreements for the sale of the real property to the auction purchasers. There were eight separate pre-petition purchase agreements. AFY had sole ownership of the real estate involved in six of the purchase agreements and Sears Cattle had an ownership interest in portions of the property involved in two of the purchase agreements. At the time of the bankruptcy filing by AFY, the real estate sale agreements were executory contracts that called for a closing on or before March 31, 2010.

4. On April 13, 2010, AFY filed a motion to approve a lease whereby it would be leasing its real property to a third party (Fil. #20 in Case No. BK10-40875). This is the same real property involved in the executory purchase agreements. Various parties resisted the motion to approve the lease, and on April 16, 2010, a motion to appoint a Chapter 11 trustee was filed by other members of the Sears family (Fil. #26 in Case No. BK10-40875).

5. A trial was held on April 29, 2010, on the motion to appoint a Chapter 11 trustee. At the conclusion of the trial, it was apparent that disputes existed between and among the various Sears family members regarding ownership and control of AFY and the appropriateness of the actions taken by the debtor in possession. Accordingly, Joseph H. Badami was appointed as the Chapter 11 trustee.

6. On May 6, 2010, Joseph H. Badami was appointed as the Chapter 11 trustee for the bankruptcy estate of AFY.

7. Mr. Badami, as Chapter 11 trustee, promptly filed a motion to assume executory contracts (Fil. #97 in Case No. BK10-40875), which motion was granted on May 14, 2010 (Fil. #113 in Case No. BK10-40875).

8. Shortly thereafter, on May 18, 2010, Mr. Strasheim withdrew his entry of appearance on behalf of AFY (Fil. #119 in Case No. BK10-40875). He did so upon inquiry of this court as to whether he could, ethically, continue representing AFY at the same time he was representing Robert and Korley Sears and various entities owned or controlled by them where there may be amounts due and owing between such entities.[2]

9. On May 19, 2010, the trustee filed a motion to compel Robert A. Sears and Sears Cattle to execute documents and otherwise take steps to implement this court's order authorizing the assumption of executory contracts selling real property (Fil. #124 in Case No. BK10-40875).

10. The hearing on the motion to compel was held on May 26, 2010. At that hearing, Robert A. Sears consented to sign the deed and other closing documents with respect to one of the two tracts in which Sears Cattle had an interest. However, Robert A. Sears, on behalf of Sears Cattle, declined to participate in the sale of the tract known as "Tract 1." The motion to compel was taken under advisement.

11. On that same date, May 26, 2010, the trustee commenced an adversary proceeding (Case No. A10-4048) against Robert A. Sears and Sears Cattle seeking specific performance of the purchase agreement with respect to Tract 1 in which Sears Cattle was a joint seller of the real property, along with AFY.

12. Upon filing the adversary proceeding against Sears Cattle and Robert A. Sears, the trustee also filed a motion for preliminary injunction to mandate performance by Sears Cattle and Robert A. Sears, as its officer, of their obligations as sellers under the purchase agreement (Fil. #2 in Case No. A10-4048). A hearing was held on the preliminary injunction on May 28, 2010, and this court found that the motion should be granted (Fil. #13 in Case No. A10-4048). Specifically, Sears Cattle and Robert A. Sears were found to be abusing the process of the bankruptcy court and were ordered to immediately close the sale or be subject to sanctions as may be requested by the Trustee or the purchaser." At that same time, and for the same reasons, this court granted the motion to compel which was still pending in the underlying bankruptcy case of AFY (Fil. #145 in Case No. BK10-40875).

13. On June 1, 2010, the trustee filed a motion for contempt (Fil. #15 in Case No. A10-4048) asserting that Sears Cattle and Robert A. Sears were still refusing to cooperate in the closing of the executory contracts regarding Tract 1. On June 3, 2010, a hearing was held on the motion for contempt. All parties involved in the executory contracts appeared, other than Mr. Strasheim, Sears Cattle, and Robert A. Sears. The court did attempt to contact Mr. Strasheim but could not reach him at the telephone number provided to the court. At the hearing, for the same

---

[2]In fact, it is not at all clear to this court that Mr. Strasheim can ethically continue to represent Robert A. Sears, Korley Sears, Sears Cattle, or any other Sears related entity after he had previously entered an appearance on behalf of AFY, the debtor in possession. However, at this point no party has objected to his continued representation.

-4-

reasons stated on the record with respect to the granting of the preliminary injunction on May 28, 2010, the motion for contempt was granted (Fil. #19 in Case No. A10-4048). Further, this court ordered that "if Defendants fail to comply and execute all necessary documents by end of business on Monday, June 7, 2010, sanctions of $10,000.00 per day shall be imposed against each Defendant." The court specifically mentioned on the record, among other reasons, the abuse of process by Robert A. Sears and by Sears Cattle as the basis for the sanctions.

      14.     The closing finally took place on June 11, 2010.

*Case No. A10-4062*:

In this adversary proceeding, the trustee has asserted two claims against Sears Cattle (Fil. #1). The first claim is for a judgment in the amount of the account receivable set forth in the schedules of AFY in the amount of $291,937.00. In addition, the trustee seeks to collect the court sanction of $10,000.00 per day for the four-day delay in closing beyond June 7, 2010. In its answer, Sears Cattle raised various defenses, asserting that the court lacked subject matter jurisdiction to enter its May 14, 2010, order that the preliminary injunction does not conform to federal rules, that the preliminary injunction does not provide reasonable detail as to the acts to be performed, and that Sears Cattle did not willfully or intentionally violate the preliminary injunction (Fil. #7). In addition, Sears Cattle filed a counterclaim asserting that by paying the proceeds of the sale of the real property, including Sears Cattle's real property, to the creditors secured by such property, the trustee has converted or wrongly misappropriated the proceeds due to Sears Cattle. Sears Cattle seeks an accounting of such proceeds and a money judgment for the amount of such proceeds.

*Case No. A10-4063*:

This adversary proceeding was filed by the trustee against Robert A. Sears. The trustee's amended complaint contained a first cause of action for turnover of a 2008 Toyota pickup (Fil. #4). At trial, the trustee acknowledged that the pickup had been turned over and that the trustee was no longer pursuing any claims with respect to such pickup. The trustee's second cause of action in his amended complaint is for collection of the court sanction in the amount of $10,000.00 per day for the delay in closing after June 7, 2010, until June 11, 2010. In his answer, Robert A. Sears raised the same affirmative defenses as Sears Cattle regarding a purported lack of subject matter jurisdiction to enter the May 14, 2010, order and regarding the lack of conformity of the preliminary injunction to federal rules, and lack of detail regarding the acts to be performed, and that he did not willfully or intentionally violate the injunction (Fil. #7). Robert A. Sears further raised a counterclaim asserting his ownership interest in the truck involved in the trustee's first cause of action and asserting rights to the truck superior to that of the trustee. Accordingly, Robert A. Sears asserted that he was entitled to the auction sale proceeds of the truck.

*Discussion*

As indicated, the cases were tried together. Documents were admitted into evidence without objection, and only two witnesses appeared: Robert A. Sears and Kyle Gifford, the certified public accountant who handled tax and financial affairs for AFY and the Sears family members and other Sears entities. At the trial, no evidence was presented in support of the counterclaim by Robert A. Sears regarding ownership of the truck or entitlement to the truck sale proceeds. In fact, Robert A. Sears did not even mention the truck in his testimony, and none of the documentary evidence supports any claim of ownership by Robert A. Sears in the truck. Therefore, Robert A. Sears' counterclaim regarding the truck in Case No. A10-4063 has no factual basis and must be dismissed.

The next issue to be addressed is the trustee's claim for collection of the account receivable from Sears Cattle in the amount of $291,937.00. At trial, Kyle Gifford testified that as the accountant for AFY and Sears Cattle, he was aware of the basis for the account receivable due from Sears Cattle to AFY. He testified that Sears Cattle borrowed that amount from AFY as part of a stock redemption involving prior owners (other Sears family members) of Sears Cattle. That amount, $291,937.00, represented the amount due from Sears Cattle to AFY on March 25, 2010, the date of bankruptcy filing. Mr. Gifford further testified that Robert and Korley Sears are the remaining owners of Sears Cattle. Further, Robert A. Sears signed the bankruptcy schedules under penalty of perjury as president of AFY, and he personally listed that account receivable on the bankruptcy schedules of AFY. When Robert A. Sears testified at trial, he did not mention or dispute the receivable. Since no evidence was presented to contradict the amount shown in the schedules and as testified to by the accountant, the trustee is entitled to judgment against Sears Cattle for $291,937.00.

Addressing next the counterclaim raised by Sears Cattle against the trustee for misappropriating or wrongfully converting the proceeds of the real property sale, again no evidence was presented to support the counterclaim. Robert A. Sears did not mention the sale proceeds in his testimony. The documentary evidence shows that the proceeds of sale were paid to the creditors secured by the real property sold. No evidence was presented to support the assertion that payment to the secured creditors was a wrongful act, a misappropriation, or a conversion. Accordingly, Sears Cattle's counterclaim in Case No. A10-4062 must be dismissed.

The final issue to be addressed pertains to the amount of sanctions that may be imposed and the affirmative defenses raised by Sears Cattle and Robert A. Sears. In both cases, the Defendants assert that this court did not have subject matter jurisdiction to enter its May 14, 2010, order granting the trustee's motion to assume executory contracts for sale of real estate in the bankruptcy case of AFY (Case No. BK10-40875). Such defense is, quite simply, nonsense. 11 U.S.C. § 157(b)(1) provides that bankruptcy judges may hear and determine core proceedings arising in a case under Title 11. 11 U.S.C. § 157(b)(2) defines core proceedings to include orders approving the sale of property and other proceedings affecting the liquidation of assets of the estate.

Although not articulated in the pleadings, it appears from the argument raised by Mr. Strasheim during opening and closing arguments at trial that his lack of jurisdiction defense is based

on the fact that Sears Cattle is a non-debtor separate entity that happened to be a joint seller under the executory contracts. He seems to be arguing that the trustee could not "assume somebody else's contract." Again, such an argument is nonsense. The trustee did not assume somebody else's contract. He assumed, with approval of this court, the executory contract of AFY to sell various parcels of real property. Sears Cattle happened to be the joint owner of one or more of the parcels involved in the executory sale contract. Sears Cattle, by its officer Korley Sears, executed those contracts on its own volition. The buyer stood ready, willing, and able to perform the purchase under the executory contracts, and the trustee stood ready, willing, and able to perform its part as seller under the executory contracts, but the sales could not close without participation by Sears Cattle since it was also a seller as a joint owner of one or more parcels involved. The lack of jurisdiction defense is, simply, baseless.

The defense that the preliminary injunction issued in Case No. A10-4048 was not in compliance with the federal rules and was otherwise too indefinite as to the acts to be performed is also baseless. The acts required were quite definite: Execute the deed and all other documents necessary to close the sale. At the hearing for issuance of the preliminary injunction, this court specifically determined that irreparable harm was being caused to the estate and the buyer by the continued delay in completion of the closing and that Sears Cattle had no valid basis for refusing to perform. The court also noted that it considered the actions and inaction by Robert A. Sears and Sears Cattle to be an abuse of the bankruptcy process that were intended to frustrate the orders of the court. Further, Nebraska law is clear that actions with respect to the conveyance of real estate are unique in nature and are properly the subject of specific performance. *3's Lounge Inc. v. Tierney*, 741 N.W.2d 687, 699 (Neb. Ct. App. 2007); *Mohrlang v. Draper*, 365 N.W.2d 443, 446 (Neb. 1985).

The most applicable defense raised by the Defendants is that they did not willfully or intentionally violate the preliminary injunction. In particular, Robert A. Sears testified that he attempted to comply with the preliminary injunction by signing documents on June 7, 8, 10, and 11, 2010. He blamed the delay on the closing agent's failure to properly prepare the closing documents for Sears Cattle. Specifically, a corporate resolution was inaccurate and the closing documents at various times listed him as the treasurer instead of the president. He testified that he eventually just signed incorrect documents just to avoid the sanction.

At trial, the only evidence presented on this issue by the trustee was documentary evidence showing that Robert A. Sears did execute certain of the closing documents on June 10, 2010. The closing agent was not called as a witness at the trial. Therefore, no evidence was presented to refute Robert A. Sears' assertion that he did make trips to the closing agent's office on June 7, 8, 10, and 11, 2010, to execute documents, but on the early occasions found the documents to be improper or incomplete. Robert A. Sears, of course, was at all times acting on behalf of Sears Cattle. Therefore, since the undisputed evidence was that attempts were made to comply but, through no fault of the Defendants (at least no fault between the dates of June 7 and June 11, 2010), the closing did not occur until June 11, 2010. Since there was no testimony from the closing agent to refute the testimony of Robert A. Sears, the trustee's claim for sanctions must be denied.

IT IS, THEREFORE, ORDERED that:

1. In Case No. A10-4062, separate judgment shall be entered in favor of Plaintiff and against Defendant on Plaintiff's first cause of action, and in favor of Defendant and against Plaintiff on Plaintiff's second cause of action; and

2. In Case No. A10-4063, separate judgment shall be entered (i) mooting Plaintiff's first cause of action; (ii) in favor of Defendant and against Plaintiff on Plaintiff's second cause of action; and (iii) in favor of Plaintiff and against Defendant dismissing Defendant's counterclaim.

DATED:  July 6, 2011.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *James A. Overcash/Joseph H. Badami
    *Jerrold L. Strasheim
    United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.